Exhibit 8

Prepared by and return to:
HomEq Servicing
Attn: Mod Imaging-CA3507
4837 Watt Avenue
North Highlands, CA 95660

Account Number: [redacted]

MS06X2

[redacted]

**Modification Agreement**

This Modification Agreement ("Agreement") is made and entered into as of this 19th day of March, 2008 by and between HomEq Servicing ("HomEq") and ALFRED P LANDOLFI and JANET LANDOLFI ("Borrower")

Whereas, HomEq is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated as of 11/15/2005, executed by Borrower or Borrower's predecessor-in-interest in the original principal amount of $393,600.00.

WHEREAS, the Note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest and is secured by either a deed of trust or mortgage ("Security Instrument") dated as of 11/15/2005. The Security Instrument encumbers certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument).

WHEREAS, due to adverse economic circumstances, Borrower has requested that HomEq adjust the terms of the Note to permit Borrower to meet Borrower's Loan obligations in a full and in a timely manner.

WHEREAS, the requested adjustment will benefit all parties to the Loan and any junior lien holder by providing the Borrower an opportunity to meet the Loan obligations in a manner intended to help the Borrower avoid default on the Loan and the necessity of foreclosure on the Property.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

**1. NOTE MODIFICATIONS:**

**(a) Outstanding Debt:** Borrower agrees that the unpaid principal balance due on the Note of **$385,749.93** shall be adjusted to **$385,749.93** ("New Balance"), to reflect the amount of unpaid interest, late charges, fees and costs, advances for unpaid property taxes and/or insurance premiums (if applicable), less any amounts forgiven, as reflected on Attachment 'A'.

Borrower agrees to pay the New Balance to HomEq and has no defenses, claims or offsets with respect thereto. Interest will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.

**(b) New Monthly Payments; Payment Adjustments:** Effective with Borrower's monthly payment due **03/01/2008,** Borrower's monthly Loan payment will be **$2,819.70**. This payment amount does not include additional amounts which may also be due for the payment of taxes and insurance premiums. The taxes and insurance payment amount will be due monthly, together with Borrower's scheduled Loan payment. Borrower agrees that a full payment hereunder and with respect to the Loan shall only be deemed to have been made when funds remitted include the required scheduled Loan payment and monthly portion of taxes and insurance premiums. The date on which the New Monthly Payment change is next scheduled to occur is hereby changed to **03/01/2013**.

**(c) New Interest Rate:** Effective on **02/01/2008,** Borrower's rate of interest will be **7.750%**. The date on which the interest rate change is next scheduled to occur is hereby changed to **02/01/2013**.

[redacted]

Account Number [redacted]

2. **RELEASE:**

Borrower releases HomEq, its subsidiaries, affiliates, agents, officers and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the origination and/or servicing of the Loan, and/or events which resulted in Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation (if applicable), California Civil Code Sec. 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Borrower's Initial ________

Borrower's Initial ________ SIGN HERE

3. **NO OTHER CHANGES:**

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations and conditions in the Note and the Security Instrument remain unmodified and in full force and effect without any defense, counterclaim, right or claim of set-off. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein, nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument, whether such rights or remedies arise herein or by operation of law.

4. **ENTIRE AGREEMENT:**

This Agreement constitutes the entire Agreement between the parties regarding the subject matter hereof. Except as otherwise provided herein, this Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether written or oral, of the parties hereto, relating to the Note and Security Instrument.

5. **VOLUNTARY EXECUTION:**

Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing below Borrower acknowledges and agrees that Borrower has voluntarily signed this Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Modification Agreement as of the date first above written.

BORROWER

Signature: ________ SIGN HERE

Name: ALFRED Landolfi

BORROWER

Signature: ________ SIGN HERE

Name: Janet Landolfi

HOMEQ SERVICING

Signature: ________

Name: Blanca Vargas, Vice President

Title: ________

**ATTACHMENT 'A'** **Loan #** [redacted]

**AMOUNTS PAST DUE - CAPITALIZED**

| | |
|---|---|
| Delinquent Interest | $0.00 |
| Late Charges | $0.00 |
| NSF Fees | $0.00 |
| Negative Escrow Balance | $0.00 |
| Corporate Advances | $0.00 |
| Mortgage Insurance Premium | $0.00 |
| Modification Fee | $0.00 |
| Other Fees | $0.00 |
| Other ______________ | $0.00 |
| | $0.00 |

**LOAN INFORMATION**

**Borrower Name:** LANDOLFI, ALFRED
LANDOLFI, JANET

**Prop Address:** 111 FULLER AVENUE
ISLIP, NY 11751

**Note Date:** 11/15/2005
**Orig Amt:** $393,600.00
**MTG/Deed Date:** 11/15/2005

**BORROWER CREDITS (-)**

| | |
|---|---|
| Contribution Amt | $0.00 |
| Suspense Bal | $0.00 |
| Other Credit | $0.00 |
| | $0.00 |

**AMOUNTS PAST DUE - FORGIVEN**

| | |
|---|---|
| Unpaid Principal | $0.00 |
| Delinquent Interest | $0.00 |
| Late Charges | $0.00 |
| Foreclosure Fees & Costs | $0.00 |
| Bankruptcy Fees & Costs | $0.00 |
| Negative Escrow Balance | $0.00 |
| Other Corporate Advances | $0.00 |
| Other Fees | $0.00 |
| | $0.00 |

**NET PRINCIPAL CAPITALIZATION (DECREASE)** $0.00

**MODIFICATION TERMS:**

| MODIFIED TERMS: | NEW TERMS: | EXISTING TERMS: |
|---|---|---|
| Principal Balance | $385,749.93 | $385,749.93 |
| P&I Payment | $2,819.70 | $3,640.83 |
| Escrow Payment | $25.04 | $25.04 |
| Total Payment | $2,844.74 | $3,665.87 |
| Due Date | 03/01/2008 | 03/01/2008 |
| Interest Rate | 7.750% | 10.750% |
| Rate Type | Fixed (5 Years) | ARM |
| Remaining Term | 334 | 334 |
| Maturity Date | 12/01/2035 | 12/01/2035 |
| Interest Only Expiration Date | N/A | N/A |
| Other ______________ | N/A | N/A |

SIGN HERE

**REPAYMENT PLAN**

| | |
|---|---|
| Begin Date | N/A |
| End Date | N/A |
| P&I Payment | N/A |
| Escrow Payment | N/A |
| Total Payment | N/A |

SIGN HERE

Borrower Acknowledgment ______________________ Date: 3/26/08

Borrower Acknowledgment ______________________ Date: 3/26/08

**Investor Loan #** ____________ MS06X2

After Recording Return To:
HomEq Servicing
Attn: Mod Imaging-CA3507
4837 Watt Avenue
North Highlands, CA 95660

This document was prepared by AZEVEDO, MATTHEW

____________________[Space Above This Line For Recording Data]____________________

Account Number: [redacted]
Record Number: [redacted]
03/11/2010 13:05:35

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):[1] ALFRED P LANDOLFI
JANET LANDOLFI
NANCY BLACKSTONE

Lender or Servicer ("Lender"): HomEq Servicing
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 11/15/2005
Loan Number: [redacted]
Property Address ("Property"):
111 FULLER AVENUE
ISLIP, NY 11751

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for lender and lender's successors and assigns. MERS is the mortgagee under the Mortgage. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

[redacted]

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender and agree:
   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. I live in the Property as my principal residence, and the Property has not been condemned;
   C. There has been no change in the ownership of the Property since I signed the Loan Documents;
   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 04/01/2010.

   A. The new Maturity Date will be: 12/01/2045.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $402,234.80 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of 03/01/2010 and the first new monthly payment on the New Principal Balance will be due on 04/01/2010. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 03/01/2010 | $1,313.16 | $925.41 May adjust periodically | $2,238.57 may adjust periodically | 04/01/2010 | 60 |
| 6 | 3.000% | 03/01/2015 | $1,502.07 | May adjust periodically | May adjust periodically | 04/01/2015 | 12 |
| 7 | 4.000% | 03/01/2016 | $1,699.51 | May adjust periodically | May adjust periodically | 04/01/2016 | 12 |
| 8-36 | 5.000% | 03/01/2017 | $1,904.04 | May adjust periodically | May adjust periodically | 04/01/2017 | 345 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their

responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

Account Number: [redacted] . Record Number: [redacted] 03/11/2010 13:05:35

In Witness Whereof, the Lender and I have executed this Agreement.

BORROWER

Signature: ______________________ Date: 3/17/10

Name: ALFRED P LANDOLFI

BORROWER

Signature: ______________________ Date: 3/17/10

Name: JANET LANDOLFI

BORROWER

Signature: Nancy Blackstone Date: 3/18/2010

Name: NANCY BLACKSTONE

Mortgage Electronic Registration Systems, Inc. – Nominee for Lender

Signature: ______________________ Date: MAR 23 2010

Name: Juanita Jennette, VP Title: ______________________

HOMEQ SERVICING

Signature: ______________________ Date: MAR 23 2010

Name: Suzanne Breaker, Vice President Title: ______________________

Account Number: [redacted] Record Number: [redacted] 03/11/2010 13:05:35

Borrower: ALFRED P LANDOLFI
JANET LANDOLFI
NANCY BLACKSTONE

Property Address: 111 FULLER AVENUE
ISLIP, NY 11751

**Additional Disclosures to Home Affordable Modification Agreement**

Lender and Borrower have agreed to enter into a Home Affordable Modification Agreement ("Agreement").

Lender desires that Borrower acknowledge and consent to certain additional matters in connection with the Agreement as set forth herein (the "Additional Disclosures").

Estimated Amounts in the Agreement: Should estimated amounts used to determine the New Principal Balance exceed the actual amounts required, the overage will be applied to reduce the New Principal Balance.

Credit Reporting: Information reported to credit bureaus will reflect that the loan has been modified as well as the payment status with respect to the modified loan.

Borrower Incentive: Please be advised that incentives, including accrued but unapplied Borrower Incentives, will not be paid by HAMP administrators after the loan is paid in full. Any Borrower Incentive received by HomEq Servicing will be applied to your mortgage loan within thirty (30) days of its receipt.

Borrower has been encouraged to review these Additional Disclosures with his/her legal advisor prior to execution. Borrower's signature below represents Borrower's acknowledgement and consent to the disclosures set forth herein.

Defined terms not defined herein shall have the meanings assigned to them in the Agreement.

Where there is a conflict between the terms of these Additional Disclosures and the terms of the Agreement, the terms of the Agreement shall govern.

Account Number: [redacted] Record Number: [redacted] 03/11/2010 13:05:35

BORROWER

Signature: _______________ Date: 3/17/10

Name: ALFRED P LANDOLFI

BORROWER

Signature: _______________ Date: 3/17/2010

Name: JANET LANDOLFI

BORROWER

Signature: Nancy Blackstone Date: 3/18/2010

Name: NANCY BLACKSTONE

Mortgage Electronic Registration Systems, ~~Inc.~~ - Nominee for Lender

Signature: _______________ Date: MAR 2 3 2010

Name: Juanita Jennette, VP Title: _______________

HOMEQ SERVICING

Signature: _______________ Date: MAR 2 3 2010

Name: Suzanne Breaker, Vice President Title: _______________

**Investor Loan #** ____________

After Recording Return To:
HomEq Servicing
Attn: Mod Imaging-CA3507
4837 Watt Avenue
North Highlands, CA 95660

This document was prepared by ANTUNES, LIONEL

____________________[Space Above This Line For Recording Data]________________

Account Number: [redacted]
Record Number: [redacted]
03/12/2010 16:29:35

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):[1] ALFRED P LANDOLFI
JANET LANDOLFI
NANCY BLACKSTONE

Lender or Servicer ("Lender"): HomEq Servicing
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 11/15/2005
Loan Number: [redacted]
Property Address ("Property"):
111 FULLER AVENUE
ISLIP, NY 11751

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for lender and lender's successors and assigns. MERS is the mortgagee under the Mortgage. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

[redacted]

1 If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender and agree:
   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. I live in the Property as my principal residence, and the Property has not been condemned;
   C. There has been no change in the ownership of the Property since I signed the Loan Documents;
   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification**. If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 04/01/2010.

   A. The new Maturity Date will be: 08/01/2045.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $400,017.59 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of 03/01/2010 and the first new monthly payment on the New Principal Balance will be due on 04/01/2010. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 03/01/2010 | $1,314.35 | $925.41 May adjust periodically | $2,239.76 may adjust periodically | 04/01/2010 | 60 |
| 6 | 3.000% | 03/01/2015 | $1,501.55 | May adjust periodically | May adjust periodically | 04/01/2015 | 12 |
| 7 | 4.000% | 03/01/2016 | $1,697.03 | May adjust periodically | May adjust periodically | 04/01/2016 | 12 |
| 8-36 | 5.000% | 03/01/2017 | $1,899.39 | May adjust periodically | May adjust periodically | 04/01/2017 | 341 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their

responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

Account Number: [redacted] Record Number: [redacted] 03/12/2010
16:29:35

In Witness Whereof, the Lender and I have executed this Agreement.

BORROWER

Signature: [signature] Date: 3-22-10

Name: ALFRED P LANDOLFI

BORROWER

Signature: [signature] Date: 3-22-10

Name: JANET LANDOLFI

BORROWER

Signature: [signature] Date: 3-22-10

Name: NANCY BLACKSTONE

Mortgage Electronic Registration Systems, Inc. Nominee for Lender

Signature: [signature] Date: MAR 30 2010

Name: Juanita Jennette, VP Title:

HOMEQ SERVICING

Signature: [signature] Date: MAR 30 2010

Name: Suzanne Breaker, Vice President Title:

Account Number:[redacted] Record Number:[redacted]. 03/12/2010 16:29:35

Borrower: ALFRED P LANDOLFI
JANET LANDOLFI
NANCY BLACKSTONE

Property Address: 111 FULLER AVENUE
ISLIP, NY 11751

**Additional Disclosures to Home Affordable Modification Agreement**

Lender and Borrower have agreed to enter into a Home Affordable Modification Agreement ("Agreement").

Lender desires that Borrower acknowledge and consent to certain additional matters in connection with the Agreement as set forth herein (the "Additional Disclosures").

Estimated Amounts in the Agreement: Should estimated amounts used to determine the New Principal Balance exceed the actual amounts required, the overage will be applied to reduce the New Principal Balance.

Credit Reporting: Information reported to credit bureaus will reflect that the loan has been modified as well as the payment status with respect to the modified loan.

Borrower Incentive: Please be advised that incentives, including accrued but unapplied Borrower Incentives, will not be paid by HAMP administrators after the loan is paid in full. Any Borrower Incentive received by HomEq Servicing will be applied to your mortgage loan within thirty (30) days of its receipt.

Borrower has been encouraged to review these Additional Disclosures with his/her legal advisor prior to execution. Borrower's signature below represents Borrower's acknowledgement and consent to the disclosures set forth herein.

Defined terms not defined herein shall have the meanings assigned to them in the Agreement.

Where there is a conflict between the terms of these Additional Disclosures and the terms of the Agreement, the terms of the Agreement shall govern.

Account Number: [redacted] Record Number: [redacted] 03/12/2010 16:29:35

BORROWER

Signature: [signature] Date: 3-22-10

Name: ALFRED P LANDOLFI

BORROWER

Signature: [signature] Date: 3-22-10

Name: JANET LANDOLFI

BORROWER

Signature: [signature] Date: 3-22-10

Name: NANCY BLACKSTONE

Mortgage Electronic Registration Systems, Inc. Nominee for Lender

Signature: [signature] Date: MAR 30 2010

Name: Juanita Jennette, VP Title:

HOMEQ SERVICING

Signature: [signature] Date: MAR 30 2010

Name: Suzanne Breaker, Vice President Title:

OCWEN
Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!* ®
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

Friday, September 22, 2017

Account Number: [redacted]

Alfred P Landolfi
111 Fuller Ave
Islip, NY 11751-2529

Property Address:
111 Fuller Ave
Islip, NY 11751-2529

## Your executed Loan Modification Agreement!

Dear Borrower(s):

We are glad to be able to assist all qualifying homeowners save their homes from foreclosure and thank you for sending in your completed Loan Modification Agreement.

Included with this letter is an executed copy of your Loan Modification Agreement to keep for your records.

If you have any questions regarding your Loan Modification Agreement, please call our Customer Care Center at 800.746.2936, Monday through Friday 8 am to 9 pm, Saturday 8 am to 5 pm and Sunday 9am to 9pm ET, and remember **"Helping Homeowners is what we do!"**

Sincerely,

*Loan Servicing*

[redacted]

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



NMLS #[redacted]

Loan Number: [redacted]
Investor Loan Number: [redacted]
MIN Number: [redacted]

This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

[Space Above This Line For Recording Data]

# LOAN MODIFICATION AGREEMENT

Borrower (s): Alfred P Landolfi, Janet Landolfi

THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $129,308.34, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

BALLOON PAYMENT DISCLOSURE
THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS THAT EVEN IF YOU MAKES ALL THE SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE OUTLINED WITHIN THIS AGREEMENT, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE* – LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST THE PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF THE EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.

The debtor, Alfred P Landolfi, Janet Landolfi, and Deutsche Bank National Trust Company, As Trustee For Morgan Stanley Home Equity Loan Trust 2006-2 through the servicer of the underlying mortgage loan agreement, Ocwen Loan Servicing, LLC, have agreed to modify the terms of said underlying mortgage loan agreement. Deutsche Bank National Trust Company, As Trustee For Morgan Stanley Home Equity Loan Trust 2006-2 is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement. Ocwen Loan Servicing, LLC, remains servicer for said underlying mortgage loan agreement.

This Loan Modification Agreement ("Agreement"), made this 28th day of July, 2017, between Alfred P Landolfi, Janet Landolfi ("Borrower") and Ocwen Loan Servicing, LLC, Lender/Servicer or Agent for Lender/Servicer ("Lender"), and Mortgage Electronic Registration Systems, Inc.("MERS") ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated 11/15/2005 and recorded in the Records of Suffolk County, NY and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

111 Fuller Ave
Islip, NY 11751

The real property described being set forth as follows:

**(Legal Description Attached, if applicable, for Recording Only)**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

## Representations:

1. Borrower is experiencing a financial hardship and as a result, 1) is or will be in default under the Loan Documents and 2) does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.
2. Under penalty of perjury, if required by the Lender, borrower provided Lender with full and complete information that, when provided, accurately stated borrower's income, expenses, and assets. To the extent requested by Lender, borrower provided documents that supported that information.
3. Borrower has made any and all required trial period plan payments or down payments.
4. Borrower currently has sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.
5. Borrower understands that property title may be reviewed as a precondition to the modification.

## Acknowledgements and Preconditions to the Modification:

1. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement are not met.
2. Prior to the Modification Effective Date (defined as 07/01/2017), if Lender determines that any of the representations above are no longer true and correct, 1) the Loan Documents will not be modified, 2) this Agreement will not be valid, and 3) Lender will have all of the rights and remedies provided by the Loan Documents.
3. The Loan Documents will not be modified unless and until 1) Lender approves this Agreement and 2) the Modification Effective Date has occurred.

## Modified Loan Terms:

1. If all of Borrower's representations above continue to be true and correct and all preconditions to the modification set forth above have been met, the Loan Documents will automatically become modified on 07/01/2017. If Borrower has failed to make any payments that are a precondition to this modification or receipt of clear title is not received, this modification will not take effect.

   The new Maturity Date will be 08/01/2045.

   Borrower understands that in order to reach an affordable payment under this modification, the loan may have been re-amortized beyond the maturity date. This means that if all payments are made in accordance with the loan terms, when

6-814-AEV73-0000192-001-09-000-001-000-000

Borrower reaches the maturity date, there will be an outstanding amount still due.

This amount includes an interest-bearing balloon payment in the amount of $120,626.97 and a non-interest bearing deferment amount of $8,681.37 making the total balloon payment of $129,308.34 ("Balloon Payment") which is due when the loan reaches maturity, sold , refinanced or otherwise accepted by the Lender as paid in full. Borrower specifically acknowledges that this is a balloon modification and therefore Borrower will have a balloon payment due at maturity in the approximate amount of $129,308.34.

**BALLOON PAYMENT: THIS MORTGAGE LOAN CONTAINS A BALLOON PAYMENT PROVISION. A BALLOON PAYMENT IS A SCHEDULED LUMP SUM USUALLY DUE AT THE END OF THE MORTGAGE LOAN TERM THAT IS SIGNIFICANTLY LARGER THAN THE OTHER REGULARLY SCHEDULED PERIODIC PAYMENTS. IF YOU CANNOT PAY THE BALLOON PAYMENT WHEN DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN TO MAKE THE BALLOON PAYMENT OR YOU MAY LOSE YOUR PROPERTY THROUGH FORECLOSURE. BEFORE DECIDING TO TAKE THIS LOAN, CONSIDER YOUR ABILITY TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE. THE BALLOON PAYMENT ON THE MORTGAGE LOAN YOU HAVE APPLIED FOR IS DUE 337 MONTHS FROM THE DATE YOUR MORTGAGE LOAN BEGINS.**

**CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN THAT YOU OBTAIN AT THIS TIME.**

2. The current Unpaid Principal Balance is $334,538.45. The New Principal Balance of the Note will be $302,000.00 (the "New Principal Balance"). This includes all amounts and arrearages that are past due as of the Modification Effective Date (including but not limited to unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the Loan. $70,083.26 of the Unpaid Principal Balance shall be forgiven upon successful completion of the final modification, and will no longer be due and owing, and is not included in the New Principal Balance. The New Principal Balance may represent the sum of the "Deferred Principal Balance" (if applicable) and the "Interest Bearing Principal Balance." The Interest Bearing Principal Balance is $293,318.63. Borrower understands that by agreeing to add the Unpaid Amounts to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the New Principal Balance, which would not happen without this Agreement.

3. Borrower promises to pay the New Principal Balance, plus interest, and any future fees/costs to the order of the Lender. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.125%, beginning 07/01/2017. Borrower promises to make monthly payments of principal and interest of U.S. $1,280.76, beginning on 08/01/2017 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this Agreement. The initial monthly escrow amount is $1,078.34. The yearly rate of 4.125% will remain in effect until principal and interest are paid in full. If on 08/01/2045 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full all amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. $8,681.37 of the New Principal Balance shall be deferred ("Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $293,318.63. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.125%, from 07/01/2017. Borrower promises to make monthly payments of principal and interest of U.S. $1,280.76, beginning on 08/01/2017, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The

6-814-AEV73-0000192-001-10-000-001-000-000

yearly rate of 4.125% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this agreement. The initial monthly escrow amount is $1,078.34. Upon 08/01/2045 (the "Maturity Date"), Borrower will still owe amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. If on 08/01/2045, Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the Maturity Date. Borrower specifically acknowledges that this is a balloon modification and therefore Borrower will have a balloon payment due at maturity in the approximate amount of $129,308.34.

The initial monthly escrow amount is $1,078.34. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* (adjusts periodically) | Total Monthly Payment* (adjusts periodically) | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 28.08 | 4.125 | 07/01/2017 | $1,280.76 | $1,078.34 | $2,359.10 | 08/01/2017 | 337 |

*The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

**Additional Agreements:**

1. **Transfer of Property.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

2. **Original Loan Document Conditions.** Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument and Note, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument and Note; however, if applicable, the following terms and provisions are forever canceled, null and void, as of 07/01/2017:

    a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    b. all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

3. Borrower understands and agrees that:

6-814-AEV73-0000192-001-11-000-001-000-000

a. **Default Under the Modification.** All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

b. **Original Loan Document Conditions.** All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender. Borrower agrees that the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

c. **Modification Does Not Constitute Release.** Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d. **Costs and Expenses.** All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

e. **Agreement to Provide Any Additional Modification Documents.** Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement. Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

f. **MERS.** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the [Mortgagee] [Beneficiary] of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MERS also has a street address of 1901 Voorhees Street, Suite C, Danville, IL 61834.In the cases where the loan has been registered with MERS who has only legal title to the interests granted by the Borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage Loan.

g. **Agreement of Use of Non-Public Information.** Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

6-814-AEV73-0000192-001-12-000-001-000-000

h. **Consent to Contact.** Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

4. **Escrow Account.** By this section, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Account.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

6-814-AEV73-0000192-001-13-000-001-000-000

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

6. **Inclusion of Exhibits.** Borrower authorizes Lender to attach an Exhibit A to this Agreement, which may include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

7. **Errors and Omissions.** That if any documents related to the loan documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of Borrower under this section shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement. At Lender's option, this Agreement will be void and of no legal effect and the loan terms will revert to the terms prior to the approved modification.

8. **Final Agreement.** This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both the Lender and the Borrower. This Modification constitutes the entire agreement between the Lender and Borrower and supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

9. **Additional Events of Default.** Without limiting the other events of default set forth in the Loan Documents, Borrower will be in default under this Agreement and under the Loan Documents upon the occurrence of any one or more of these events:
   a. Any material representation or warranty made by you in the Loan Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

   b. Borrower fails to make the New Monthly Payments as required by this Agreement.

   c. Borrower sells or conveys any interest in the Property without Lender's prior written consent.

   d. Breach of any of the terms or provisions of this Agreement.

10. **Consequences of Default.** If Borrower defaults under this Agreement or the Loan Documents after the Modification Effective Date (your "Default"), Lender may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Agreement and exercise any of its rights and remedies against Borrower under the Loan Documents and/or this Agreement.

11. **Mortgage Insurance.** Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which may result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

12. **Credit Reporting.** Lender is required to report factual information to the credit reporting agencies. Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the credit report.

6-814-AEV73-0000192-001-14-000-001-000-000

13. **No Novation.** Borrower expressly agrees that this Agreement is not a new loan from Lender but simply the modification of the existing obligations under the Loan Documents. Neither Borrower nor Lender has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

6-814-AEV73-0000192-001-15-000-001-000-000

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to Ocwen Loan Servicing.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

8/8/17 [signature]
Date Alfred P Landolfi

8/8/17 Janet L Landolfi
Date Janet Landolfi

6-814-AEV73-0000192-001-16-000-001-000-000

## UNIFORM FORM CERTIFICATE OF ACKNOWLEDGEMENT

State of New York

County of Suffolk

On the 8 day of August in the year 2017, before me, the undersigned, personally appeared Alfred Lanzetti, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

Notary Public

Lynn Hubert
Printed Name

My Commission Expires:
5/27/2018

LYNN HUBERT
NOTARY PUBLIC-STATE OF NEW YORK
No. 01HU6074863
Qualified in Suffolk County
My Commission Expires May 27, 2018

6-814-AEV73-0000192-001-17-000-001-000-000

# LENDER ACKNOWLEDGEMENT

**(For Lender's Signature Only)**

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

Ocwen Loan Servicing

_______________________________________

Mortgage Electronic Registration Systems, Inc.
Nominee for Lender, its successors and assigns

**Desmond Cummings**
**Assistant Secretary**
_______________________________________
Date SEP 2 1 2017

State of ____________________

County of ____________________

On this __ day of _________, ____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared ____________________________, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _________________________ of Mortgage Electronic Registration Systems Inc., Nominee for Lender, its successors and assigns, said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_______________________________________
Notary Public

My Commission Expires: ____________________

6-814-AEV73-0000192-001-18-000-001-000-000